# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EMILY COWEY, et al.,** | : | |
| Plaintiffs | : | Case No. – 2:20-cv-01845 |
| v. | : | |
| **WILLIAM MULLEN, et al.,** | : | |
| Defendants | : | |

## DECLARATION OF BRANDON COMBS

I, Brandon Combs, am competent to state and declare the following based on my personal knowledge:

1. I am the President of Firearms Policy Coalition, Inc. ("FPC"), a Plaintiff in this action. I am authorized to testify on behalf of FPC as to matters set forth in this Declaration.

2. I have held the position of president of FPC since FPC was founded in 2014. As its president, I am duly authorized to act on behalf of the organization.

3. FPC is a 501(c)(4) non-profit organization incorporated under the laws of Delaware, with places of business in Pennsylvania, California, Nevada, Idaho, and other states.

4. FPC's purposes are: (A) To protect and defend the Constitution of the United States and the People's rights, privileges and immunities deeply rooted in this

Nation's history and tradition, especially the inalienable, fundamental, and individual right to keep and bear arms; (B) To protect, defend, and advance the means and methods by which the People of the United States may exercise those rights, including, but not limited to, the acquisition, collection, transportation, exhibition, carry, care, use, and disposition of arms for all lawful purposes, including, but not limited to, self-defense, hunting, and service in the appropriate militia for the common defense of the Republic and the individual liberty of its citizens; (C) To foster and promote the shooting sports and all lawful uses of arms; and, (D) To foster and promote awareness of, and public engagement in, all of the above.

5. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom.

6. FPC serves its members, supporters who have all the indicia of membership, and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

7. FPC also operates a Hotline, accessible by phone, email, and on the Internet, where FPC members and supporters, and members of the public, can submit reports of, inter alia, violations of their rights and requests for information about how to comply with various firearm laws that apply to them.

8. FPC has members and supporters who reside in Pennsylvania, including in Allegheny County, and in other states.

9. FPC's members and supporters in Allegheny County, including Plaintiffs Emily Cowey, Chelsea Schmidt, and Alan Booth, generally wish and intend to carry a loaded, operable handgun on their person, in public and in motor vehicles, for the purpose of immediate self-defense and other lawful purposes.

10. Many of FPC's members and supporters in Allegheny County, including Plaintiffs Emily Cowey, Chelsea Schmidt, and Alan Booth, desire and intend to apply for or renew a LTCF but because of Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein, including Defendants Sheriff Mullen and County of Allegheny, Pennsylvania's ("County Defendants") closure of their Allegheny County Sheriff's Office Firearms Division ("ASCO Firearms Division"), have been unable to do so.

11. With the recent civil unrest, violent protests, and riots, FPC's members and supporters have become particularly concerned about their safety, especially when they are outside of their home in public places or traveling in motor vehicles, and wish to exercise the right to carry a loaded, operable firearm for self-defense in public.

12. FPC's members and supporters are generally not exempt from the Commonwealth's criminal laws banning the carry of firearms generally, as well as during states of emergency.

13. It is my understanding of Pennsylvania law that 18 Pa.C.S. § 6106 prohibits individuals from carrying a concealed firearm for self-defense absent being issued a LTCF by the County Defendants under 18 Pa.C.S. § 6109.

14. It is my understanding of Pennsylvania law that, due to Governor Wolf's proclamations of emergency, 18 Pa.C.S. § 6107 makes it unlawful to carry a firearm upon the public streets or upon any public property absent being issued a LTCF by the County Defendants under 18 Pa.C.S. § 6109.

15. Pennsylvania law prevents individuals from applying for a LTCF in any other county in which they are not a resident.

16. Many Pennsylvania county sheriffs, such as those for the counties of Schuylkill, Berks, Blair, Bucks, Cambria, Monroe, Montgomery, Pike, and Wayne have implemented and are using common online systems to allow individuals to apply for a LTCF completely over the Internet, negating the need for a person to appear in person to apply.

17. Because of Defendants' laws, policies, and enforcement practices, FPC's members and supporters, including the named plaintiffs, who are without a LTCF, have been and remain disarmed in public, prevented from exercising

their right to bear arms by carrying a loaded, operable firearm for all lawful purposes including self-defense without being subject to criminal prosecution for violating 18 Pa.C.S. §§ 6106 and/or 6107.

18. My understanding is that Defendant Evanchick and the County Defendants have and currently are enforcing the laws and policies which make it a crime for individuals, including FPC's members and supporters, in Allegheny County to carry a loaded, operable handgun in public for self-defense without a LTCF that can only be issued to them by the County Defendants.

19. If FPC's members and supporters without a LTCF, but who are otherwise eligible to receive one, are convicted of an offense under 18 Pa.C.S. §§ 6106 or 6107, that will trigger the federal prohibition found in 18 U.S.C. § 922(g)(1) and result in a lifetime ban on the exercise of their Second Amendment right to keep and bear arms and ammunition.

20. My understanding is that many of FPC's members and supporters in Allegheny County have so far abstained from such constitutionally protected conduct because they fear that the Defendants will enforce their laws and policies on them, including by arrest, prosecution, incarceration, a fine, and a lifetime ban on keeping and bearing arms.

21. Some of FPC's members and supporters have been trying to acquire a LTCF from County Defendants' ACSO Firearms Division for many months.

22. Many of FPC's members and supporters have been frustrated and discouraged from acquiring their LTCF by County Defendants' policies and practices, and have been unable to make or attend an appointment at County Defendants' ACSO Firearms Division to submit a LTCF application, thereby preventing them from exercising their constitutionally enumerated right to bear arms.

23. In addition to Plaintiffs Cowey, Schmidt, and Booth, FPC has members and supporters who are residents of Allegheny County, Pennsylvania who do not have a LTCF and do not fit one of the exemptions to the Commonwealth's criminal laws prohibiting carry of firearms in public, but wish to carry loaded firearms in public for lawful purposes including self-defense, and would do so forthwith but for the challenged laws, policies, and enforcement practices.

24. FPC's members and supporters in Allegheny County who do not have a LTCF but who wish to carry have been adversely and directly harmed by Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged in this action.

25. FPC represents the interests of all its members and supporters who, like Plaintiffs Cowey, Schmidt, and Booth, are completely prohibited, on pain of criminal punishment and permanent deprivation of Second Amendment rights, from carrying firearms in public for lawful purposes including self-defense, and similarly situated members of the public.

26. Many FPC members and supporters have contacted the organization and its Hotline because they have been unable to schedule an appointment to submit an application or obtain a LTCF from the County Defendants, and thus unable to lawfully exercise their right to bear arms, because of the County Defendants' closure of their ASCO Firearms Division as well as the enormous backlog of appointments stretching into 2021, rendering access to the ASCO Firearms Division to submit an application impossible.

27. I have personally seen the County Defendants' public notice closing their ASCO Firearms Division "until further notice."

28. I have personally seen reports by FPC members and supporters, as well as other members of the public, complaining of the County Defendants' policies and practices imposing burdens and long delays with respect to LTCF applications and issuance of LTCF licenses.

29. Based upon reports by FPC members and members of the public in and around Allegheny County, as well as my own review of their laws, policies, and enforcement practices, my understanding is that County Defendants cause: 1) their ASCO Firearms Division to have less staff, resources, and capabilities than necessary to timely provide constitutionally required services that are necessary to access and exercise a fundamental, individual right; 2) their ASCO Firearms Division to impose burdens far beyond what is required to

determine if an applicant is "disqualified from exercising Second Amendment rights"; 3) their ASCO Firearms Division to treat firearm-related services disfavorably compared to the County Defendants' other services, thus "singl[ing] out for special—and specially unfavorable—treatment" the right to keep and bear arms, rendering it a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," as denounced by the United States Supreme Court, *McDonald v. City of Chicago*, 561 U.S. 742, 750, 778-780 (2010); and, 4) the denial of the constitutional right and ability to carry loaded, operable firearms in public as to law-abiding Allegheny County residents without a valid LTCF.

30. FPC is participating in this case on behalf of its members and supporters, including the named Plaintiffs, and similarly situated individuals.

31. FPC has been and continues to be adversely and directly harmed, and has and continues to have its purposes and mission frustrated, because of Defendants' laws and orders, and their enforcement policies, orders, practices, customs, and actions challenged herein.

32. As a result of Defendants' laws and policies, and Defendants' enforcement actions and implementation of their laws and policies, FPC has incurred costs due to receiving, investigating, and responding to requests from its members,

supporters, and the public, investigating Defendants' laws, policies, and enforcement practices, as well as in this action.

33. All of these costs, including expenditures of time and money, caused by Defendants' laws and policies, and their enforcement thereof, come at the expense of other priorities that FPC would otherwise pursue.

34. If the Defendants' laws, orders, and enforcement policies, practices, and customs challenged in this case are not enjoined, based upon the current volume of reports and requests for assistance, and my years of experience with such matters, I expect that FPC will receive dozens, and potentially hundreds, more similar reports and requests for assistance in the coming weeks that FPC will necessarily have to review, investigate, and respond to.

35. Defendants' laws and orders, and their enforcement policies, orders, practices, customs, and actions challenged herein, have caused and are continuing to cause FPC to expend and divert resources to identify and/or counteract the Defendants' unlawful actions.

36. If the Defendants' laws, orders, and enforcement policies, practices, and customs challenged in this case are not enjoined, additional harm will result in the form of ongoing damages and irreparable harm to FPC and its members, and similarly situated members of the public.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my information, knowledge and belief.

Date: December 2, 2020

_____
Brandon Combs